THOMPSON v. FEDERAL FARM MORTG.
CORPORATION et al.

No. 12656.

Circuit Court of Appeals, Eighth Circuit.

Feb. 10, 1944.

R. Brown, of Creston, Iowa, for appellant.

Clair L. Kintz, of Omaha, Neb. (G. Belvel Richter, of Waukon, Iowa, Lewis W. Bicknell, of Webster, S. D., and Harold J. Reed, of Omaha, Neb. on the brief), for appellees.

Before STONE, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

In March 1936, appellant purchased the land involved, aggregating 360 acres, situated in Allamakee and Winneshiek Counties, Iowa, where appellant resides. The purchase price for the land was found by the court to be nominally $11,800. The farm was encumbered by mortgages in the principal sum of $10,800 with accumulations of interest. The deed to appellant conveyed the land subject to these encumbrances without assumption by the grantee. Debtor appellant paid the difference in cash,—between $700 and $800.

The said mortgage indebtedness consisted of a first mortgage of $7,000 to appellee Federal Land Bank, and a second mortgage of $3,800 to appellee Farm Mortgage Corporation, which latter appellee foreclosed its mortgage in the state court, and purchased the real estate at foreclosure sale February 27, 1942, for the sum of $3,000, subject to said first mortgage. February 26, 1943, appellant filed her petition under Section 75, subs. a to r, of the Bankruptcy Act, 11 U.S.C.A. § 203, subs. a to r. April 10, 1943, appellee Federal Farm Mortgage Corporation filed in the said district court a petition asking for a denial and dismissal of appellant's petition on the ground that appellant was not a farmer as defined by the Act. A hearing was had on this petition before Judge Scott on April 29, 1943. On May 12, 1943, the district judge entered his findings of facts and conclusions of law, judgment that appellant was not a farmer, and dismissed her petition. May 27, 1943, appellant appealed from this judgment. October 12, 1943, appellees filed with this court a motion to dismiss this appeal upon the ground that it was then moot, appellant having permitted the lands to pass from the jurisdiction of the bankruptcy

court. The court denied this motion without determination of the merits, which might be considered in connection with the jurisdictional question presented.

■ Appellant has urged nominally a number of points of error upon which she has elected to rely, but the entire controversy resolves itself into the question of whether she was a farmer within the meaning of Section 75, sub. r, when she filed her petition and sought relief under the provisions of that Act. Neither appellant nor her husband had ever engaged in farming prior to the purchase of this land. The record is barren of information as to appellant's prior activities except that, in 1940 and 1941, she says that she served as a caterer for parties in her home in Waukon. Her husband testified at the hearing that since 1938 he had been employed continuously away from Waukon, with State and Federal Employment Service, except during vacation periods. That during 1939, 1940 and 1941, his wife had the supervising of farming operations in co-operation with himself. A careful examination of the testimony at the hearing discloses that such alleged supervising was confined to week-end visits on Saturday afternoons and Sundays, with occasional days in addition thereto.

Mr. Thompson testifies that "the ultimate object of Mrs. Thompson and I in purchasing this farm was to make it our home". However, the fact that during the six years intervening between the purchase and the foreclosure sale on February 27, 1942, appellant and her husband took no steps to establish a home and residence upon the farm, confining their operations and so-called supervisions to week-end and vacation visits, tends to discredit this testimony. During all this period, as found by the court, appellant and her husband maintained their home at Waukon, with the exception of one period at Dubuque, when the employment in State and Federal Employment Service demanded. The evidence at the hearing does not support appellant's statement that they lived "half and half on farm and in town".

Debtor, through her husband, paid only between $700 and $800 of the purchase price in cash. No records of farming operations were presented and they conceded that they made very little profit on the farm. At the time the purchase was made the farm was highly encumbered, and without prospect of successful operation. The agricultural portions were rented for short periods to several parties during some of the years. Mr. Thompson testifies that in 1937 and 1938 the farm was managed on stock-share lease to one Gilman Reed. That in 1939, 1940 and 1941, his wife and he operated the farm themselves. But Mr. Oscar Christopherson occupied the crop land during most of these years; Thompson was continuously engaged in his Employment Service, and he and his wife visited the farm only occasionally on week-end periods.

In his argument counsel for appellant "contends she is a farmer within the special definition of Section 75, sub. r, as defined in the Beach case". That case is found in First Nat. Bank & Trust Co. v. Beach, 301 U.S. at page 435, 57 S.Ct. 801, 81 L.Ed. 1206.

Subsection r of Section 75 defines the term "farmer" as follows:

"The term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations * * *; and a farmer shall be deemed a resident of any county in which such operations occur."

In the Beach case [301 U.S. 435, 57 S.Ct. 803, 81 L.Ed. 1206] the Supreme Court says:

"In every case the totality of the facts is to be considered and appraised. We pass to that appraisal here.

"Beach, the respondent, must be held, when the facts are viewed in combination, to have been 'personally' and 'primarily' engaged in farming operations.

"He was in that business or in none. He was either a farmer or a man of leisure. Cf. In re Glick [7 Cir.], 26 F.2d 398, 400. But the stipulation makes it clear that this last he certainly was not. He was in direct or personal possession of forty-eight acres, one-fourth of the large farm which had been in his family for years. A substantial part of this acreage he cultivated with his own labor, or applied, again with his own labor, to other agricultural uses. He did this, not for diversion or only in

spare hours, but as an engrossing occupation, consuming in the words of the stipulation, 'the major portion of his time.' The products of his toil were food for him and his dependents, and the farmhouse was a home."

■ This description of Beach has no application to appellant and her husband. Neither of them had theretofore been farmers in any sense of the word. Neither of them was personally and primarily bona fide engaged in farming operations, as an engrossing occupation, nor for the major portion of their time. The products of their "toil" furnished no food for them or their dependents, nor was the farmhouse their home.

We join both husband and wife in this discussion because, while he claims to have been in exclusive authority for and on behalf of his wife during this farm program, appellant herself confined her activities to those of a normal housewife. In no branch of the statutory definition does appellant qualify as a farmer within the contemplation of the Act. The trial court had overwhelming support for its findings and conclusions. The provisions of this Act for agricultural composition or extension was intended as a temporary measure for relief of hard pressed farmers by affording an opportunity for rehabilitations. McLean v. Federal Land Bank of Omaha, 8 Cir., 130 F.2d 123.

■ The test in determining whether a debtor seeking relief under this Act is a farmer within its meaning, is whether he is, or was, either primarily bona fide personally engaged in the prescribed agricultural operations, or whether the principal part of his income is derived from such activities. In re Horner, 7 Cir., 104 F.2d 600. In the McLean case, supra, this court further held:

"In order to qualify as a 'farmer' entitled to benefits of Bankruptcy Act provision for agricultural composition or extension proceedings, some actual connection with the farm besides a mere equity therein newly acquired for the purpose of taking advantage of the act is necessary, and what will establish such connection is a matter of fact to be determined upon consideration of the entire situation presented in a particular case."

■ Where the evidence in proceeding for agricultural composition or extension supports the finding that the debtor is not a farmer, the district court is without jurisdiction to adjudicate the debtor a bankrupt. Mulligan v. Federal Land Bank of Omaha, 8 Cir., 129 F.2d 438, 441. We are convinced that the cases are generally consistent upon this point when read with due relation to the facts. First National Bank & Trust Co. v. Beach, 301 U.S. 435, 441, 57 S.Ct. 801, 81 L.Ed. 1206.

In his brief counsel for appellant charges that the trial court erred in holding that the vocation of the husband controlled and fixed the vocation of the wife, appellant herein. We find no such holding by the court, and appellees expressly concede that in Iowa a married woman may conduct business in her own name as though she were unmarried. That specification may therefore be disregarded.

In view of our conclusion upon the jurisdictional question presented by this appeal, we find it unnecessary to pass upon the motion to dismiss upon the ground urged in appellees' motion filed October 13, 1943.

The trial court found that appellant was not a farmer within the meaning of Section 75 of the Bankruptcy Act at the time of filing her petition; concluded therefore that the court was without jurisdiction of the matter and dismissed the petition. The record contains full support of this action, and the judgment appealed from is affirmed.